## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN JACOBSON, a minor, by | ) | |
| ROBERT JACOBSON and BEVERLY | ) | |
| JACOBSON, as the parents and | ) | |
| natural guardian of | ) | |
| RYAN JACOBSON, | ) | Civil Action No. 02-181 |
| | ) | |
| Plaintiff, | ) | Judge Flowers Conti |
| | ) | Magistrate Judge Caiazza |
| v. | ) | |
| | ) | |
| BMW of NORTH AMERICA, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

#### I.   RECOMMENDATION

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment (Doc. 153) be denied, and the Defendants' Motion (Doc. 150) be granted in part and denied in part, as described below.

#### II.   REPORT

##### BACKGROUND

In this diversity action, the Plaintiff brings product liability claims against the Defendants (collectively "BMW") regarding his father's 1987 BMW Model 325 ("the vehicle"). *See generally* Defs.' Br. (Doc. 151).  The minor-Plaintiff is claimed to have shifted the vehicle out of park and into either reverse or neutral, while the keys were not in the ignition and the brake pedal was not depressed.  *See id.* at 2.

The automobile was parked on an incline, and it proceeded to roll backward. *See generally id.* at 2-3. After an unsuccessful attempt to return the gear shift to park, the Plaintiff leapt from the front passenger window of the moving vehicle. *See id.* He was then struck by the vehicle, suffering serious bodily injury. *See generally* Pl.'s Br. (Doc. 153) at 3-4.[1]

The Plaintiff's primary legal theory is that of design defect, alleging the vehicle should have been equipped with a "Park Lock System" ("PLS"), which "prevents the gear shift from being shifted out of park if the key is removed from the ignition," and/or a "Brake Shift Interlock" ("BSI"), which "prevents the gear shift from being shifted out of park unless the brake pedal is depressed." *See generally* Defs.' Statement of Facts (Doc. 152) at 1-2. In support of this theory, the Plaintiff has retained as an expert mechanical engineer Hal I. Dunham, P.E. ("Mr. Dunham"). *See generally* Pl.'s Expert Rpt. (attached as Ex. C to Doc. 153). Among other things, Mr. Dunham's report indicates that the PLS and BSI technologies were known to, and utilized by, other car manufacturers at or around the time Mr. Jacobson's vehicle was manufactured in 1987. *See generally* Expert Rpt. at 3-6, 8. For this reason,

---

[1] The Plaintiff was twelve years old at the time. *See id.* at 2. His nine year old brother, Christopher, remained in the rear seat, avoiding injury. *See generally id.* at 2-3. Christopher and the Plaintiff's father, Robert Jacobson, have supplied the details regarding the accident; the Plaintiff cannot recall what happened. *See generally* Dep. Trs. of Robert & Ryan Jacobson (excerpts attached as Exs. A & B to Doc. 153).

and assuming the circumstances surrounding the accident were as described by the Jacobsons, Mr. Dunham has opined that the Plaintiff's injuries would have been avoided had BMW utilized the PLS and/or BSI technologies. *See generally id.*

The Defendants have filed a Motion for Summary Judgment, seeking exclusion of Mr. Dunham's opinions under Federal Rule of Evidence 702. *See generally* Defs.' Br. at 4-19.  The Plaintiff has cross-moved for summary judgment, generally claiming entitlement to judgment as a matter of law. *See generally* Pl.'s Br.

## ANALYSIS

### A.   The Plaintiff's Motion for Summary Judgment Should Be Denied

The Plaintiff's supporting brief consists almost exclusively of unsupported factual averments and boilerplate legal standards. *See generally* Doc. 153.  The moving papers articulate no meaningful basis for the entry of summary judgment, and counsel ignores the relevant legal standards.  *See id.*

Reading the evidence in a light most favorable to the non-moving party, material issues of fact abound. *Compare, e.g.*, Defs.' Opp'n Br. (Doc. 161) at 5 (noting Mr. Dunham's admissions that accident could have been caused by Mr. Jacobson's leaving keys in ignition, vehicle being left out of gear, or car being driven down incline) *with* discussion *supra* (noting Plaintiff's

testimony he did not recall how accident happened); *see also generally* Defs.' Opp'n Br. at 6 (highlighting report of Defendants' expert, opining vehicle was not defectively designed).

The Plaintiff's Motion is without merit and should be denied.

**B.** **The Defendants' Motion for Summary Judgment**

    1.   BMW Has Failed to Demonstrate the Inadmissibility of Mr. Dunham's Opinions Regarding Defective Design

BMW first asserts that Mr. Dunham is not qualified to offer opinions in this case, having insufficient training and experience in automotive engineering. *See* Defs.' Br. at 6-7. This argument ignores the "liberal[]" interpretation afforded Rule 702's qualification inquiry, as well as the Third Circuit Court's "reluctance to require highly particularized, sub-specialization on the part of experts." *See* Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (citation and internal quotations omitted); Knight v. Otis Elevator Co., 596 F.2d 84, 88 (3d Cir. 1979).

Mr. Dunham has been a registered mechanical engineer for over twenty-five years, he is a member of the Society of Automotive Engineers, and he has had specialized training in automobile collision dynamics and brake design and safety. *See* Curriculum Vitae (attached as Ex. D to Doc. 153) at 1-2.

-4-

Since 1988, he has worked with an engineering firm, conducting product reliability investigations, vehicular accident reconstructions, failure analysis, and product testing.  *See id.* at 2.  Mr. Dunham is more than qualified under the liberal standards annunciated above.

BMW also asserts that the expert's methodology is flawed because of his "total reliance on the representations of [P]laintiff's counsel to obtain an understanding of how and why the accident might have happened."  *See* Defs.' Br. at 9-11; *see also, e.g., id.* at 9 (complaining that expert did not interview the Jacobsons, read their depositions, or inspect accident scene).  Again, this argument is inconsistent with the law.

Mr. Dunham has not been offered to establish whether the circumstances surrounding the accident occurred as described by the Jacobsons.  It seems unlikely that any expert, absent the ability to travel through time and space, could divine precisely what happened in the cabin of the vehicle on the day in question. What transpired is for the jury to determine, based on its assessment of the fact witnesses' testimony and its corresponding credibility determinations.

Mr. Dunham has been offered to opine whether, based on the facts alleged by the Jacobsons, BMW's inclusion of known and existing safety technology could have prevented Ryan Jacobson's injuries.  Given the Plaintiff's introduction of independent

-5-

evidence in support of his theory, Mr. Dunham certainly may offer opinions regarding the hypothetical situation presented.  Newman v. Hy-Way Heat Sys., Inc., 789 F.2d 269, 270 (4th Cir. 1986) ("[i]t is fixed law that an expert can give his opinion on the basis of hypothetical facts," so long as "those facts [are] established by independent evidence properly introduced"); see Wilburn v. Maritrans GP Inc., 139 F.3d 350, 356 (3d Cir. 1998) ("a qualified expert may answer hypothetical questions") (citation and internal quotations omitted); see also, e.g., Bogacki v. American Mach. & Foundry Co., 417 F.2d 400, 409 (3d Cir. 1969) (affirming trial court's admission of expert opinion in response to hypothetical question; although underlying facts were "considerably weakened by cross-examination, the issue of credibility was for the jury and [the expert's] conclusion . . . had a sufficient evidentiary basis").[2]

BMW next argues that Mr. Dunham's methodology is flawed because he "did nothing to test or verify any of his opinions or proposed alternative designs."  See Defs.' Br. at 11.  Courts have found it incumbent upon an expert claiming design defect to demonstrate the feasibility of an alternative safer design.  See, e.g., Oddi v. Ford Motor Co., 234 F.3d 136, 156, 158 (3d Cir. 2000) (affirming exclusion of expert's opinion because he never

---

[2]  The Defendants' hearsay objection is similarly misplaced.  See Defs.' Br. at 10 ("Mr. Dunham will not be permitted to testify at trial about how . . . the accident might have happened").  Fact witnesses will supply the underlying information, not the experts.

-6-

tested proposed alternative designs, and therefore could not show "[the] suggested alternative would better protect the cab's occupant, or if the suggested modifications were practical"), *cert. denied*, 532 U.S. 921 (2001); <u>Creazzo v. Sun</u>, 2005 WL 2453400 (Pa. Comm. Pl. Jun. 3, 2005) (appearing to endorse standard that "summary judgment should be granted [where the] Plaintiff['s] expert [does] not propose an alternative design").

When an expert is able to demonstrate that the alternative design was being used by other manufacturers, however, feasibility is much less an issue.  *See, e.g.*, <u>Rypkema v. Time Mfg. Co.</u>, 263 F. Supp.2d 687, 692 (S.D.N.Y. 2003) (plaintiff's expert can "prove the existence of a feasible alternative" by "identify[ing] makers of similar equipment who have already put into use the alternative design"); <u>McDaniel v. Trail King Indus., Inc.</u>, 248 F. Supp.2d 749, 757 (N.D. Ill. 2002) ("[g]iven that the alternative design [was] already used throughout the industry," plaintiff "established for the purposes of summary judgment that the [alternative] design [was] economical, practical, and effective").  In light of Mr. Dunham's findings in this regard, the Plaintiff's evidence is sufficient for the purposes of summary judgment.  *Cf.* <u>Surace v. Caterpillar, Inc.</u>, 111 F.3d 1039, 1049 (3d Cir. 1997) ("expert testimony alone may be sufficient, for purposes of summary judgment, to demonstrate

feasibility" of alternative design) (citation omitted).[3]

The above analyses reveal the fundamental flaws of BMW's arguments under Rule 702. They also show why the two cases most heavily relied upon by Defense counsel are distinguishable. *See* Defs.' Br. at 13-18 (discussing at length <u>Oddi</u> and <u>Bourelle</u>); *see also* discussion *supra* (noting that expert in <u>Oddi</u> failed to conduct any investigation of feasibility); <u>Bourelle v. Crown Equip. Corp.</u>, 220 F.3d 532, 536-37 (7th Cir. 2000) (affirming exclusion of expert opinion for same reason).

The only other issue warranting comment is Defense counsel's repeated reference to BMW's compliance with the Federal Motor Vehicle Safety Standards. *See, e.g.*, Defs.' Br. at 12; Defs.' Opp'n Br. at 6; Defs.' Reply Br. (Doc. 164) at 5 n.1. Interestingly, these references are unaccompanied by citation to legal authority addressing the relevance of the Standards. *See id.* On this point, the law is not favorable. *See* <u>Harsh v. Petroll</u>, 840 A.2d 404, 424-25 (Pa. Commw. 2003) (affirming trial

---

[3]  The law is not entirely clear regarding whether the "alternative design" requirement is part of every design defect claim in Pennsylvania. *See, e.g.*, <u>Goldstein v. Phillip Morris, Inc.</u>, 854 A.2d 585, 587 (Pa. Super. 2004) (stating, in *dicta* and without explanation, that "a feasible alternative design . . . is not even a necessary element of a design defect case"); *see also* <u>Phillips v. Cricket Lighters</u>, 841 A.2d 1000, 1019 n.13 (Pa. 2003) (Saylor, J., concurring) (arguing for adoption of Restatement (Third) of Torts, which "acknowledges the possibility of manifest unreasonableness of a product, despite lack of an alternative, safer design") (citation omitted); *but cf.* <u>Daddona v. Thind</u>, -- A.2d --, 2005 WL 3719970, *2 (Pa. Commw. Jan. 31, 2006) (for "[c]rashworthiness" claim, which "is a subset of products liability law," proof of safer alternative design is part of *prima facie* case) (citations omitted). In light of the Plaintiff's reliance on feasibility, however, the District Court need not become entangled in these subtleties.

court's exclusion in products liability case of car
manufacturer's evidence of compliance with FMVSS), *aff'd*,
887 A.2d 209 (Pa. 2005).[4]

For all of the reasons stated above, the Defendants are not
entitled to summary judgment on the Plaintiff's design defect
claims.

2.    Summary Judgment Should Be Granted Regarding the
      Plaintiff's Failure to Warn Claims

In the closing passage of his expert report, Mr. Dunham
states:

> The BMW vehicle owner's manual only warns to
> take the keys with you when leaving children
> in the vehicle, but fails to warn of the
> automatic transmission shifter's design
> hazard that could allow the vehicle to roll
> away.  A recall and retrofit including a
> warning label and an owner's manual revision
> could have been distributed . . . by BWM
> between 1987 and before this 1999 accident.

*See* Expert Rpt. at 8.  This is the sum total of Mr. Dunham's
analysis regarding BMW's failure to warn.  *See generally id.*

In his deposition, the expert conceded that he had not
formed the substance of a proposed warning, the format or
logistics of providing it, and/or where the warning should be

---

[4]  Assuming the Defendants did not neglect to research the issue, counsel are
reminded of their duty of candor to the court.  *See* Asirobicon, Inc. v.
Rolls-Royce PLC, 2003 WL 22071002, *9 n.9 (W.D. Pa. Sept. 5, 2003) ("[a]
lawyer shall not knowingly . . . fail to disclose to the tribunal legal
authority in the controlling jurisdiction known . . . to be directly adverse
to the position of the client").

located or affixed.  *See generally* Dep. Tr. of H. Dunham (excerpts attached to Doc. 151) at 200-204.

Unlike the case of defective design, Mr. Dunham's opinions regarding BMW's failure to warn are not supported by indicia of feasibility.  In addition, his statements appear almost an afterthought to an expert report otherwise devoted to establishing defective design.

The Plaintiff's evidence cannot survive under Rule 702, and summary judgment should be granted regarding the failure to warn. *See, e.g.*, Bourelle, 220 F.3d at 539 (affirming grant of summary judgment regarding failure to warn because expert "fail[ed] to even draft a proposed alternative warning"; expert's opinions unreliable where he did not "design[] a warning device [that] would have been more appropriate, much less test[] its effectiveness") (citations and internal quotations omitted); Berrier v. Simplicity Corp., -- F. Supp.2d --, 2005 WL 3750158, *12 (E.D. Pa. Jun. 29, 2005) (recognizing essentially same).

3.   There Is No Claim for Manufacturing Defect

Although the Plaintiff has made passing reference to this theory, his counsel identifies no evidence in support of the same.  The Defendants' Motion for Summary Judgment remains uncontested, and it should be granted.

4.   <u>The Defendants' Arguments Regarding Post-Sale Duties</u>

BMW asserts that it owed no duty to recall or retrofit the Model 325 line to include the PLS or BSI technologies because the product was not defective when sold.  *See generally* Defs.' Br. at 24-25.  If indeed the vehicle is found not to have been defective at that time, the Defendants' position finds some support in the law.  *See* <u>DeSantis v. Frick Co.</u>, 745 A.2d 624, 630 (Pa. Super. 1999) ("no post-sale <u>duty to warn</u> about technological advances exists where no defect existed in the product at the time of sale") (citation omitted, emphasis added).

In any event, the Plaintiff fails to advance the theory that the vehicle was non-defective when sold but later became defective based on technological advances.  *See generally* Am. Compl. (Doc. 21).  And while the pleadings do make reference to BMW's ability to retrofit, *see id.* at ¶ 14, this arises within the context of standard design defect allegations, not as an independent claim.  *See id.* at Count I.

For these reasons, the Defendants' request for summary judgment regarding post-sale duties is a non-issue.[5]

---

[5]  The Plaintiff appreciates that the vehicle must have been defective at the time it was sold.  *See generally* "Brief in Support of Plaintiff's Reply to Defendants' . . . Motion for Summary Judgment" (Doc. 163) at 15.

Unrelatedly, Plaintiff's counsel should cease titling briefs in opposition to motions, "reply" briefs.  In federal court, there are motions, responses to motions, and replies to responses (if permitted).  Calling a response brief a "reply" introduces needless confusion into the adjudicative process.  Moreover, a party responding to a motion need not file both a "response" and a "brief in response."  *See* Docs. 162, 163.  A single document, titled the party's "brief," "memorandum" or "response" in opposition, will suffice.

**CONCLUSION**

The Plaintiff's Motion for Summary Judgment should be denied, and the Defendants' Motion granted in part and denied in part as described above.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this report and recommendation are due by March 10, 2006.  Responses to objections are due by March 20, 2006.

February 22, 2006_____          _Francis X. Caiazza_____ _____
                                                Francis X. Caiazza
                                                U.S. Magistrate Judge

cc:

Monte J. Rabner, Esq.
429 Fourth Avenue
800 Law & Finance Building
Pittsburgh, PA  15219

Arnd N. von Waldow, Esq.
Reed Smith
435 Sixth Avenue
Pittsburgh, PA  15219-1886

-------------------------------

Finally, counsel are urged to avoid filing duplicative supporting materials with motions and opposition papers.  *See, e.g.,* Docs. 151 & 152 (Defendants' Brief and Statement of Facts, each attaching same eighty-two pages of Mr. Dunham's deposition testimony); Docs. 153 & 162 (Plaintiff's Supporting and Opposition Briefs, attaching essentially same materials).  In this age of electronic filing, the court devotes considerable time to parsing through and printing the often numerous attachments submitted with the parties' motions and responses.  The submission of the same evidentiary materials with multiple filings only serves to make the process more difficult and time-consuming. Gone, moreover, are the perceived benefits of making each submission a stand-alone product, with no incorporation of exhibits by reference. All of the materials can be accessed with similar ease; there is no "file to pull," it must be independently created.